## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DAVE ROBINSON,**

      **Plaintiff,**

**v.**

**ALTER BARGE LINE, INC.,**

      **Defendant.**                        **Case No. 05-cv-665-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I.  INTRODUCTION

Plaintiff Dave Robinson filed his Complaint (Doc. 2) against defendant Alter Barge Line, Inc., alleging two counts: Count I for retaliatory discharge under Illinois common law and Count II for a violation of the Illinois Whistleblower Act, **740 ILL. COMP. STAT. 174/20**.  Prior to his termination, Plaintiff worked as an employee for Defendant as a deckhand aboard river towboats.  Although Plaintiff initially filed suit in the Circuit Court, Third Judicial Circuit, Madison County, Illinois, Defendant thereafter removed it to  federal court (Doc. 1) based upon diversity jurisdiction, **28 U.S.C. § 1332**.  The matter is now before the Court is Defendant's Motion for Summary Judgment with supporting memorandum (Docs.

9 & 10); Plaintiff has responded in opposition (Doc. 11) and Defendant has replied (Doc. 12).

Defendant's Motion raises the issue of whether Plaintiff's claims are preempted by federal maritime law.  Specifically, Defendant argues that Plaintiff's claims are preempted by the federal statute, **46 U.S.C. § 2114**, enacted by Congress to protect seamen from retaliatory discharge for whistleblowing (Doc. 10, p. 5).  Defendant also argues that the broader Illinois common law directly conflicts with the much narrower scope of retaliatory discharge claims allowed under general maritime law. Therefore, Defendant advocates that Illinois law must yield to federal maritime law. Applying admiralty law, Defendant argues Plaintiff's claims fail as a matter of law, thereby warranting summary judgment in its favor.  As is discussed within this Order, the Court finds Defendant's preemption arguments prevailing.

## II.  <u>FACTS</u>

The following facts appear to be undisputed by the parties.  Plaintiff was employed by Defendant from 2002 to 2004, working as a deckhand aboard Defendant's vessels (river towboats), which operated on the inland waterways of the United States (Doc. 2, ¶¶ 2-4; Doc. 10, p. 1, citing Ex. A - Robinson Deposition, pp. 11-12 & 18-22).  During the tenure of his employment with Defendant, Plaintiff claims he observed various crewmen using alcohol and illegal drugs aboard Defendant's towboats, including the towboat to which he was assigned, and due to his personal observations, believed that there was "a small drug culture on

[Defendant's] boats" (Doc. 11, Ex. 9 - Robinson Depo., p. 70).[1]  Plaintiff's concerns prompted him to contact Defendant's Human Resources Manager, Mary Jekel, in late September, 2004, to complain about his coworkers' drug use[2] and requested that drug testing be performed on the crew (Doc. 2, ¶ 7; Doc. 3, ¶ 7).[3]

Less than a month later, on October 26, 2004, Defendant terminated Plaintiff's employment (Doc. 2, ¶ 8; Doc. 3, ¶ 8).  Here is where the main factual dispute lies: Plaintiff believes he was terminated in retaliation for "rocking the boat," by reporting his coworkers' drug use to Defendant's Human Resources Manager, Mary Jekel (Doc. 11, Ex. 9 - Robinson Depo., p. 97).  In turn, Defendant asserts Plaintiff's termination was not in retaliation for any of Plaintiff's actions (stating Plaintiff's concerns were "groundless"); Plaintiff was terminated, according to Defendant, due to his "unsatisfactory job performance" (Doc. 11, Ex. 8 - Kirschbaum

---

[1]  To clarify, Defendant does not admit that its employees were engaged in the use of illegal drugs aboard its boats; yet, it admits these are the concerns Plaintiff voiced to certain other personnel.  However, Defendant maintains that it investigated Plaintiff's complaint, which it found "groundless" (Doc. 3, ¶ 7).

[2]  Some of Plaintiff's specific comments to Jekel regarding the illegal drug use were: on the boats, "[i]t is possible to 'buy anything you want' at various stops on the river . . . below Baton Rouge it is like a McDonalds.  There's even a number to call a day ahead and order whatever you want and it will be ready for you when you get there . . . you can order pot, cocaine, etc., whatever you want.  Some crew members are so zoned out on the boat they can't work. . . . Alcohol is a problem too; bottles of whiskey in some rooms . . ." (Doc. 11, Ex. 5 - e-mail correspondence from Mary Jekel to Randy Kirschbaum, entitled "Dave Robinson Notes," dated September 27, 2004).

[3]  It appears Plaintiff thereafter made two further attempts to notify Defendant's personnel regarding his concern that crewmembers were using illegal drugs. He reported the alleged drug use to Defendant's Marine Manager, Randy Kirschbaum, this time providing names of the crewmen and also made a second telephone call to Mary Jekel, specifically identifying those crewmembers he believed were using illegal drugs (Doc. 2, ¶ 6, Doc. 11, p. 1).  Defendant, however, denies Plaintiff ever reported the drug use to its Marine Manager (Doc. 3, ¶ 6) and does not specifically comment on Plaintiff's second communication with Mary Jekel.

Depo, p. 57).

### III.  LEGAL STANDARD

**A.      Summary Judgment**

   Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986)**.  The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law.  *Wollin v. Gondert***, 192 F.3d 616, 621-22 (7th Cir. 1999)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.  *Schneiker v. Fortis Ins. Co.***, 200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park***, 195 F.3d 333, 337-38 (7th Cir. 1999)**.

**B.      Preemption**

   Defendant, in support of its Motion for Summary Judgment, asserts that federal maritime law should govern this dispute, as "[t]he scope of maritime law delegated to federal control clearly encompasses the seaman/employer relationship" (Doc. 10, pp. 2-3, citing *London Guarantee & Accident Co. v. Industrial Comm'n of California***, 279 U.S. 109, 49 S. Ct. 296 (1929)**).  Next, Defendant makes the argument that Illinois law directly conflicts with federal maritime law regarding

retaliatory discharge and thus, Illinois law must yield to federal law.

The preemption doctrine originates from the Supremacy Clause of the United States Constitution.[4] Preemption requires an analysis of congressional intent behind the federal law at issue. Such intent may be either expressly or impliedly given by Congress. ***Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 338, 104 S. Ct. 615, 621 (1984)**. Express preemption is given when "Congress' command is explicitly stated in the statute's language . . . ." ***Fidelity Fed. Savings & Loan Assoc. v. De la Cuesta*, 458 U.S. 141, 152-53, 102 S. Ct. 3014, 3022 (1982)**. Otherwise, Congress may implicitly preempt state law when:

> the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.'

***Id.* (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947))**.

Lastly, the preemption doctrine will serve to "nullif[y] [state law] to the extent that it actually conflicts with federal law." ***Id.* at 153, 102 S. Ct. at 3022**.

---

[4] The Supremacy Clause, embodied in Article VI, clause 2 of the United States Constitution, reads:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

This type of conflict occurs if compliance with both federal and state law would amount to a "physical impossibility," or if state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" ***Id.*** **(citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143, 83 S. Ct. 1210, 1217 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941)).**

## C.    Federal Maritime Law

The United States Constitution extends federal judicial power "to all cases of admiralty and maritime jurisdiction." ***Am. Dredging Co. v. Miller*, 510 U.S. 443, 446, 114 S. Ct. 981, 984 (1994)(citing U.S. Const., Art. III, § 2, cl. 1)**. Thus, the Constitution strips the states of their judicial and legislative power "to contravene the essential purposes of, or to work material injury to, characteristic features of such [general maritime law] or to interfere with its proper harmony and uniformity in its international and interstate relations." ***Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 160, 40 S. Ct. 438 (1920)**.  Instead, the "paramount power to fix and determine the maritime law" of this country rests with Congress. ***So. Pac. Co. v. Jensen*, 244 U.S. 205, 215, 37 S. Ct. 524, 528-29 (1917)**. Therefore, maritime law applies in the absence of some controlling statute.  ***Id.***

However, federal jurisdiction over maritime cases "has never been entirely exclusive." ***Am. Dredging Co.*, 510 U.S. at 446, 114 S. Ct. at 984**.  In fact, **28 U.S.C. § 1333(1)**, the "saving to suitors" clause, allows "in all [civil] cases [of

admiralty and maritime jurisdiction] the right of a common law remedy where the common law is competent to give it." ***Jensen*, 244 U.S. at 218, 37 S. Ct. at 529-30**. As such, state regulation is applicable to maritime matters when it clearly does not conflict with the federal law. ***Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 341, 93 S. Ct. 1590, 1600 (1973)**. In other words, state law should not substantively alter existing maritime law, otherwise it "interferes with the proper harmony and uniformity of [general maritime] law in its international and interstate relations." ***Am. Dredging Co.*, 510 U.S. at 447, 114 S. Ct. at 985 (citing *Jensen*, 244 U.S. at 216, 37 S. Ct. at 529)**.

## IV.  ANALYSIS

As grounds for its summary judgment motion, Defendant argues that Plaintiff's claims fail as a matter of law because a whistleblower claim under Illinois common law and a claim pursuant to the Illinois Whistleblower Act are both preempted by federal statutory and/or general maritime  law (Doc. 10, pp. 5-11). The federal statute Defendant believes is preemptive in this case is **46 U.S.C. § 2114**: a whistleblower protection statute passed by Congress in 1984, designed to create a private cause of action for seamen, to guard against their unlawful discharge.

**A.    Plaintiff's Whistleblower Claim in Count II**

Plaintiff's Count II states a claim pursuant to Section 20 of the Act, which makes it illegal for an employer to "retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law,

rule, or regulation." The Court shall first examine the federal and the state statutory causes of action, to determine whether a conflict exists.

1. **46 U.S.C. § 2114[5]**

An employer can terminate an "at-will" employee under common law principles "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." ***Smith v. Atlas Off-Shore Boat Serv., Inc.,*** **653 F.2d 1057, 1060 (5th Cir. 1981)(internal citation omitted)**. Eventually,

---

[5] **46 U.S.C. § 2114** reads:
   **(a)(1)** A person may not discharge or in any manner discriminate against a seaman because--
      **(A)** the seaman in good faith has reported or is about to report to the Coast Guard or other appropriate Federal agency or department that the seaman believes that a violation of a maritime safety law or regulation prescribed under that law or regulation has occurred; or
      **(B)** the seaman has refused to perform duties ordered by the seaman's employer because the seaman has a reasonable apprehension or expectation that performing such duties would result in serious injury to the seaman, other seamen, or the public.

      **(2)** The circumstances causing a seaman's apprehension of serious injury under paragraph (1)(B) must be of such a nature that a reasonable person, under similar circumstances, would conclude that there is a real danger of an injury or serious impairment of health resulting from the performance of duties as ordered by the seaman's employer.

      **(3)** To qualify for protection against the seaman's employer under paragraph (1)(B), the employee must have sought from the employer, and been unable to obtain, correction of the unsafe condition.

   **(b)** A seaman discharged or otherwise discriminated against in violation of this section may bring an action in an appropriate district court of the United States. In that action, the court may order any appropriate relief, including--

      **(1)** restraining violations of this section;
      **(2)** reinstatement to the seaman's former position with back pay; and
      **(3)** an award of costs and reasonable attorney's fees to a prevailing plaintiff not exceeding $1,000; and
      **(4)** an award of costs and reasonable attorney's fees to a prevailing employer not exceeding $1,000 if the court finds that a complaint filed under this section is frivolous or has been brought in bad faith.

courts began to recognize a cause of action sounding in tort for when an at-will employee is discharged by the employer for reasons that offend public policy. **Id. at 1062 (stating that the employer's right to discharge an employee for any reason should not suffice when the right is abused in order to "contravene an established public policy")**. In **Smith v. Atlas Off-Shore Boat Services, Inc.**, the Fifth Circuit, recognizing that under general maritime law a seaman is an at-will employee, found that the common law right of the employer to discharge the at-will seaman for any or no good reason "should not be used as a means of effectuating a purpose ulterior to that for which the right is designed." **Id. (internal citation omitted)**. In turn, this reasoning lead the Fifth Circuit to find that an exception exists to the at-will doctrine when a seaman is terminated for filing a personal injury action against the employer. **Id. at 1063 ("The employer should not be permitted to use his absolute discharge right to retaliate against a seaman for seeking to recover what is due him or to intimidate the seaman from seeking legal redress. The right to discharge at will should not be allowed to bar the courthouse door.")**.

Two years later, the Fifth Circuit decided **Donovan v. Texaco**, where a seaman had been discharged for reporting to the Coast Guard what he believed to be a safety violation. **720 F.2d 825 (5th Cir. 1983)**. The seaman brought an action for retaliatory discharge pursuant to Section 11(c) of the Occupational Safety and Health Act ("OSH Act"), which prohibits retaliatory actions against employees who

exercise their rights under the act.  ***Id.* at 826**.  Ultimately, the Fifth Circuit found that the OSH Act was not applicable to seaman, and thus, denied the claim.  ***Id.* at 829**.

Fortunately for seaman to experience such a problem in the future, as a result, Congress responded by enacting a federal maritime whistleblower statute, **46 U.S.C. § 2114**, which gives a seaman a private cause of action when he is discharged for reporting a violation of a safety law to the Coast Guard or other federal authority.  ***See* S. Rep. No. 98-454, at 12 (1984),** ***as reprinted in* 1984 U.S.C.C.A.N. 4831, 4842 (the drafting committee stating that § 2114 "responds to *Donovan v. Texaco*")**.  However, by enacting this federal maritime whistleblower statute, Congress did not render inapplicable general maritime retaliatory discharge law.  In fact, the Fourth and Fifth Circuits adhered to the principle that an action for retaliatory discharge still existed for when seamen were terminated due to filing personal injury actions against their employers.  ***See, e.g., Feemster v. BJ-Titan Services. Co./Titan Services., Inc.*, 873 F.2d 91 (5th Cir. 1989); *Meaige v. Hartley Marine Corp.*, 925 F.2d 700, 702 (4th Cir. 1991)**.

2. **Illinois Whistleblower Act**

In January, 2004, Illinois enacted its own Whistleblower Act, **740 ILL. COMP. STAT. 174/1-174/35**.  Plaintiff has brought Count II pursuant to Section 20[6] of the Act (but another statutory cause of action also exists under Section 15[7]).  Plaintiff's Count II states a claim pursuant to Section 20 of the Act, which makes it illegal for an employer to "retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation."

Defendant argues the Illinois Whistleblower Act is preempted by federal maritime law **46 U.S.C. § 2114**, as it is already on point (Doc. 10, p. 10-11).  Illinois courts have found that the Illinois Whistleblower Act is a codification of the Illinois common law "whistleblower" retaliatory discharge claim.  ***See, e.g., Jones v. Dew**, No. 06-c-3577, 2006 WL 3718053 at \*3 (N.D. Ill. Dec. 13, 2006); **Sprinkle v. Lowe's Home Centers, Inc.**, No. 04-cv-4116, 2006 WL 2038580 at \* 5 (S.D. Ill. July 19, 2006)(citing **Sutherland v. Norfolk Southern Ry. Co.**, 826 N.E.2d 1021, 1025 n.4 (Ill. App. Ct. 2005)).  **Cf. Krum v. Chicago Nat'l League Ball**

---

[6] **740 ILL. COMP. STAT. 174/20** reads:
> An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation.

[7] **740 ILL. COMP. STAT. 174/15** reads:
> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

*Club, Inc.*, 851 N.E.2d 621 (Ill. App. Ct. 2006)(**plaintiff, as a contract employee, could not show he was actually discharged by employer instead of his contract merely expiring and therefore, appellate court did not need to reach the issue of whether the Illinois Whistleblower Act preempts common law claim of retaliatory discharge, although circuit court had found preemption**).

**3.     Whether the Illinois Act Conflicts with 46 U.S.C. § 2114**

Similarly, as its legislative history indicates,, is a codification in response to the outcome in ***Donnovan***, as Congress sought to create an exception to the at-will general maritime law, providing a cause of action for seamen who were discharged by their employer for reporting a violation of a safety law to the Coast Guard or other federal authority.  Comparing the federal and state statutory causes of action, both are codifications for a whistleblower retaliatory discharge claim; an exception to the at-will employment doctrine, yet certain conflicts exist between the two.

The Illinois Whistleblower Act allows the discharged employee to report the suspected violation to either state *or* federal governmental authority, whereas **46 U.S.C. § 2114** only provides a cause of action if the seaman reported to either the Coast Guard or other federal authority.  Both **46 U.S.C. § 2114** and the Illinois Whistleblower Act provide for a cause of action when the seaman/employee was discharged for refusing to perform certain duties required by the employer, reasonably believed to be unsafe or in violation of a law.  Only **46 U.S.C. § 2114**,

however, contains a precursor requirement for the discharged seaman to have first "sought from the employer, and been unable to obtain, correction of the unsafe condition," prior to being discharged and/or reporting to the federal authorities.  **46 U.S.C. § 2114(a)(3)**.

    Lastly, the remedies differ.  While both statutory actions have remedies providing for the discharged plaintiff to be reinstated with the same seniority status and receive backpay, the Illinois Act[8] allows recovery of interest on this backpay, whereas the federal statute does not.  Further, the federal statute places a cap on the amount of attorneys' fees and costs the plaintiff may be reimbursed, whereas the Illinois Act does not have such a limitation.  Illinois also makes a violation of the Act a Class A misdeameanor.  **740 ILL. COMP. STAT. 174/25**.

    Therefore, the Court finds that the federal statutory cause of action for a whistleblower retaliatory discharge claim, codified in **46 U.S.C. § 2114**, impliedly preempts the Illinois Whistleblower Act, as to apply the Illinois Act in conjunction or instead of the federal statute would destroy the uniformity of the rules applicable to commerce on inland waterways.  It would subject a seaman to different reporting

---

[8]  The Illinois Whistleblower Act, at **740 ILL. COMP. STAT. 174/30**, provides:

 If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole, including but not limited to the following, as appropriate:

  (1) reinstatement with the same seniority status that the employee would have had, but for the violation;
  (2) back pay, with interest; and
  (3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.

requirements when passing through Illinois waters than when the seaman is outside

the jurisdiction, as well as subject the employer to different penalties for the same

behavior.  This is not what was intended for maritime law.  ***See Am. Dredging Co.,***

***510 U.S. at 447, 114 S. Ct. at 985* (citing *Jensen*,  244 U.S. at 216, 37 S. Ct. at**

***529*)**.

       **4.**       **Whether Plaintiff has a Viable Whistleblower Claim**

       Finding that the Illinois Whistleblower Act to be preempted by **46 U.S.C.**

**§ 2114**, the Court also finds that even had Plaintiff properly brought a whistleblower

claim pursuant to the federal statute, he Plaintiff does not have a viable

whistleblower retaliatory discharge cause of action.  Plaintiff plead this cause of

action in Count II of his Complaint.  The germane allegations of the Complaint state:

> Defendant terminated Plaintiff's employment in retaliation for
> Plaintiff's refusal to participate in activities that would result in
> violation(s) of state and/or federal law, to-wit: the operation of a
> commercial vessel on public waterways while one or more
> members of the crew members were under the influence of illegal
> drugs and/or in an impaired condition.

(Doc. 2, ¶ 9).

       However, as this is a summary judgment motion, Plaintiff may not

merely rest on the allegations, but the Court must also take into account the entire

record, to determine if a material question of fact exists.  Defendant argues there was

nothing Plaintiff actually *refused* to do; contrary to his allegations (and his argument

in his opposing Response), Plaintiff never refused to work with certain individuals

or to perform a task, evidenced from his own deposition testimony:

Q:     During the time you were at Alter and working aboard any Alter boat, did you ever refuse to perform any of your duties as a deckhand because you believed performing those duties would result in serious injury to you or a fellow crew member or to anyone else?

A:     I don't believe so.  I believe I did everything that was asked.

Q:     Did you ever refuse to do any work for Alter because another crew member that you believed had taken or used drugs was going to be on watch with you?

A:     No, they were never on watch with me, so, no.

Q:     Okay, so the people that you observed using drugs were always on a watch opposite yours?

A:     Usually the opposite watch, or if they were up during my watch, they were from the other watch.  Most of them would only get high or drink if they was at the end of their watch.  They wouldn't take their personal risk of going out on tow high.

(Doc. 10, Ex. A - Dave Robinson Depo., 95:25 - 96:20).

Therefore, the Court finds the facts of this case show there was no actual "refusal," except for the Court's *own* refusal to construe that term so broadly to allow Count II of Plaintiff's Complaint to survive as a matter of law.  Further, the record indicates Plaintiff never made a report to the federal authorities until some time *after* he was discharged by Defendant.  Therefore, because Plaintiff's Illinois Whistleblower Act claim is preempted by federal maritime statutory law, and also because a plain language interpretation of **46 U.S.C. § 2114** indicates Plaintiff could not state a viable claim under this federal statute, summary judgment with respect to Count II of Plaintiff's Complaint is granted in favor of Defendant.

**B.      Plaintiff's Common Law Retaliatory Discharge Claim in Count I**

Plaintiff's remaining claim is stated in Count I of his Complaint, which pleads a cause of action for retaliatory discharge pursuant to Illinois common law. It is Defendant's belief that **46 U.S.C. § 2114** limits whistleblower protection for seamen to when the seaman is discharged in retaliation for either (1) reporting, or being able to report, a violation of maritime safety law or regulation to the Coast Guard or another federal agency, or (2) refusing to perform duties ordered by the employer because the seaman reasonably believes this would result in serious injury to either the seaman, coworkers or the public (Doc. 10, p. 5).

As Illinois common law for retaliatory discharge seems to offer a broader scope of whistleblower protection than the federal statute, Defendant argues that it conflicts with **46 U.S.C. § 2114** and should be preempted (Doc. 10, p. 9). Secondly, Defendant argues that a claim of retaliatory discharge brought under Illinois common law would conflict with general maritime law, and should therefore be preempted, yielding to the sole application of federal maritime law (Doc. 10, pp. 7-10).   The Court has already found **46 U.S.C. § 2114** preempts the Illinois Whistleblower Act (a codification of the Illinois common law claim of retaliatory discharge for whistleblowing), but because the Court has also determined other exceptions to the at-will employment doctrine exist under general maritime law, it will not declare that **46 U.S.C. § 2114** preempts other common law exceptions to the at-will employment doctrine.  Therefore, the Court will instead examine the scope

of Illinois common law for retaliatory discharge to determine if it is in conflict with general maritime law.

### 1.    Illinois Common Law for Retaliatory Discharge

Plaintiff's claim in Count I rests on the fact that he believes he was terminated in retaliation for reporting that some of Defendant's crewmembers were using illegal drugs.  Plaintiff made his report internally within the company (he did not report to the Coast Guard or other federal agency until *after* he was terminated, nor did he ever indicate directly to Defendant that he would be reporting to any outside authorities).[9]  Illinois is an at-will employment state, but allows for an exception to the employment-at-will doctrine when the employee is terminated in violation of an established public policy.  ***Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 132-33, 421 N.E.2d 876, 877-78, 52 Ill. Dec. 13, 16-17 (1981)(citing *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353, 23 Ill. Dec. 559 (1978)).**  Therefore, a claim for retaliatory discharge in Illinois requires the following elements be met: (1) an employee was discharged, (2) in retaliation for his or her activities, and (3) the discharge is contravenes clear public policy.  ***Bourbon v.***

---

[9]  While Defendant construes Plaintiff's Count I, brought under Illinois common law, as a whistleblower claim, the Court will instead construe it as a claim of discharge in violation of public policy in retaliation for Plaintiff's actions, which happen to be reporting illegal drug use of crewmembers to company personnel (as Defendant has not completely proven otherwise, the facts must be construed in favor of the nonmoving party).  A seemingly minor nuance, but nevertheless important.  The Illinois Whistleblower Act was enacted to encourage employees to report violations of the laws to outside authority.  As Illinois case law shows (as discussed *infra*), the Illinois statutory cause of action does not obviate the need for common law recourse when the employee is discharged in retaliation for reporting the suspected violation *internally*.  With that being said, Plaintiff's claim in Count I still walks dangerously close to a Whistleblower claim, but for purposes of this analysis, the Court will regard it pursuant to the common law as explained.

***Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000)(citing *Hartlein v. Ill. Pwr. Co.*, 151 Ill.2d 142, 601 N.E.2d 720, 728, Ill. Dec. 22 (1992))**.

Illinois law recognizes a claim for retaliatory discharge when an employee is terminated "in retaliation for . . . [making] complaints about an employer's unlawful conduct." ***Brandon v. Anesthesia & Pain Mgt. Assoc., Ltd.*, 277 F.3d 936, 940-41 (7th Cir. 2002)(citing *Pratt v. Caterpillar Tractor Co.*, 149 Ill. App. 3d 588, 500 N.E.2d 1001, 1002, 102 Ill. Dec. 900 (1986)(other citation omitted); *see also Bourbon*, 223 F.3d at 472; *Belline v. K-Mart Corp.*, 940 F.2d 184, 187 (7th Cir. 1991)("To hold otherwise would be to create perverse incentives by inviting concerned employees to bypass internal channels altogether and immediately summon the police.")(citation omitted); *Parr v. Triplett Corp.*, 727 F. Supp. 1163, 1166-67 (N.D. Ill. 1989); *Sutherland v. Norfolk So. Railway* Co., 356 Ill. App. 3d 620,627, 826 N.E.2d 1021, 1027, 292 Ill. Dec. 585, 591 (1st Dist. 2005); *Johnson v. World Color Press, Inc.*, 147 Ill. App. 3d 746, 752, 498 N.E.2d 575, 578-79, 101 Ill. Dec. 251, 254-55 (5th Dist. 1986)**. Further, it is not a requirement that the employee have reported the alleged violation to outside authorities; it is sufficient to have reported it to the employer. ***Id.* at 941 (citing *Lanning v. Morris Mobile Meals, Inc.*, 308 Ill. App. 3d 490, 720 N.E.2d 1128, 1130-31, 242 Ill. Dec. 173 (1999))**. Lastly, the claim only requires the employee to have had a reasonable belief that the reported conduct was unlawful. ***Id.* (citing *Stebbings v. Univ. of Chicago*, 312 Ill. App. 3d 360,**

**726 N.E.2d 1136, 1144, 244 Ill. Dec. 825 (2000)**).

  2.  **General Maritime Law**

    In ***Feemster v. BJ-Titan Services. Co./Titan Services, Inc.,*** the Fifth Circuit refused to expand its holding in ***Smith*** to allow a tugboat captain to bring claim of retaliatory discharge for refusing to pilot and 18-hour run on a barge without stopping. **873 F.2d 91, 92 (5th Cir. 1989)**. The seaman believed the run was too long for one person to safely navigate alone and would also violate a federal law that generally restricted vessel operation to 12 hours in a 24-hour period. ***Id.*** **(citing 46 U.S.C. § 8104(h))**. He urged the court to consider his refusal to commit the unlawful act as an exception to the general maritime employment-at-will doctrine. Analyzing the facts, the Fifth Circuit did not feel that the public policy considerations at issue in ***Feemster*** were as clearly implicated as they had been in ***Smith***. Moreover, the appellate court found because the dispute never "ripened to the extent that it [could] support a claim of retaliatory discharge for [the seaman's] refusal to commit an unlawful act . . ." it made it "difficult to characterize this as a retaliation that offends public policy." ***Id.* at 94 (noting that the seaman never sailed the barge and therefore there was no violation of the law – a violation was only speculative**); ***see also Garrie v. James L. Gray, Inc.,*** **912 F.2d 808, 813 (5th Cir. 1990)(subsequent case that also involved retaliatory discharge claim for seaman's refusal to pilot ship for fear of violating § 8104(h), where Fifth Circuit adopted its holding in *Feemster*, again refusing to create another exception to**

the employment-at-will doctrine).

Several years later, in **_Meaige v. Hartley Marine Corp.,_** another seaman brought a claim for retaliatory discharge for his refusal to operate a boat in excess of the 12-hour limitations period of **46 U.S.C. § 8104(h)** (the same statute at issue in **_Feemster_**).  **925 F.2d 700, 702 (4th Cir. 1991),** **_cert. denied_, 501 U.S. 1217 (1991)**.  The Fourth Circuit construed the holding in **_Feemster_** as finding that only one exception exists to the general maritime employment-at-will employment doctrine – for filing a personal injury action against the employer without fearing retaliatory discharge.  **_Id._ at 702 (citing _Feemster_, 873 F.2d at 91, for the principle that "there is no private right of action under general maritime law arising from discharge for refusal to carry out an assignment that would violate a federal statute")**.  The Fourth Circuit further found that the seaman's claim of retaliatory discharge pursuant to West Virginia's common law conflicted with the "body of federal maritime jurisprudence relating to wrongful discharge . . . ." **_Id._**  As such, a claim pursuant to state common law would only serve to undermine the uniformity of the federal admiralty law and was therefore was properly dismissed. **_Id._ at 703**.

> ### 3.    Whether Illinois Common Law Conflicts with General Maritime Law

Defendant cites to **_Feemster_** and **_Meaige_** in support of its argument that Plaintiff cannot maintain a cause of action for retaliatory discharge under general maritime law, as the only recognized exception to the employment-at-will

doctrine is for the filing of personal injury claims against the seaman's employer. Given this narrow application, Defendant asserts that the Illinois common law for retaliatory discharge causes of action, which is much broader, would then conflict with federal maritime law and thus, should be preempted. True, this is the rationale adopted by the Fourth Circuit in **Meaige**, but the Court observes that several cases have found otherwise.

Unfortunately, there seems to be nothing on-point yet determined by the Seventh Circuit or Supreme Court to shape the Court's analysis in the instant matter. Certain courts have declined to adopt **Meaige's** narrow reading of **Feemster**, finding that other exceptions to the general maritime employment-at-will doctrine exist when the discharge of the seaman goes against strong public policy. **See, e.g., Borden v. Amoco Coastwise Trading Co., 985 F. Supp. 692, 698 (S.D. Tex. 1997)(allowing, in accordance with Smith rationale, a retaliatory discharge claim brought under general maritime law due to strong public policy supporting seaman's refusal to pilot tugboat during impending storm in unseaworthy vessel, as it would have endangered the lives of others, explaining "Feemster itself recognized the public policy exception, but found it nonapplicable in that case"); Seymore v. Lake Tahoe Cruises, Inc., 888 F. Supp. 1029, 1035 (E.D. Cal. 1995)(finding that its holding was in accordance with Smith's rationale – recognizing a retaliatory discharge cause of action under general maritime law when the termination of seaman violates an**

important public policy – when sea captain brought claim for refusing to risk lives by sailing a ship with a leaking hull); *Clements v. Gamblers Supply Mgt. Co.*, 610 N.W.2d 847, 850 (Iowa 2000)(refusing to accord with *Meaige's* rationale that the "body of federal maritime jurisprudence relating to wrongful discharge is an impenetrable body of law that fails to recognize a remedy for termination of employment as retaliation for an employee's assertion of concern for the safety of a ship and its passengers, and instead finding federal general maritime law allows for a common law cause of action for retaliatory discharge in violation of public policy"); *Baiton v. Carnival Cruise Lines, Inc.*, 661 So.2d 313, 315 (Fla. Dist. Ct. App. 1995)(allowing seaman's retaliatory discharge claim when seaman was discharged for refusing to give false testimony in a crewmember's Jones Act proceeding at the behest of his employer).

Additionally, even though the Fourth Circuit, in *Meaige*, directly held that West Virginia's common law was preempted by general maritime law, **925 F.2d at 702-03**, other courts have found room for both federal maritime law and state common law regarding retaliatory discharge to coexist within a single lawsuit. *See, e.g.*, *Zbylut*, 361 F.3d at 1095 (concluding admiralty law did not preempt state wrongful discharge claim because, as stated by the Supreme Court in *American Dredging Co.*, state law would not substantively change maritime law); *Clements*, 610 N.W.2d at 849-50 (also recognizing that *American Dredging Co.* indicates the Supreme Court acknowledged a harmonious existence of state and

**general maritime law, as long as state law yields to maritime law in event that the failure to do so would substantively alter maritime law and therefore finding "no fundamental tenet of substantive maritime law is frustrated by the state law retaliatory discharge claims . . . in the present case");** *Baiton***, 661 So.2d at 315 (finding "no inconsistency with federal law or federal policy by application of the Florida whistle-blower statute in this factual context").**

While the Court believes general maritime law may provide for additional exceptions to the at-will employment doctrine outside of the confines of *Feemster* and *Meaige*, it is unwilling to read *Smith* so broadly.[10]   Comparing Illinois common law for retaliatory discharge with general maritime law, it is evident Illinois law gives a much wider berth for what it considers a viable retaliatory discharge cause of action.  General maritime law, although complete synchronicity fails to yet exist among the circuits, presents a much narrower scope.  This presents a conflict.  Otherwise, a seaman could have a viable claim for retaliatory discharge when passing through the jurisdiction of Illinois that he would not likely have elsewhere.   Thus, the Court is convinced that Illinois common law regarding retaliatory discharge must yield to general maritime law.  Failure to do so would only serve to "interfere with [general maritime law's] proper harmony and uniformity in

---

[10] Especially given the fact that had the Fifth Circuit wanted to interpret its own holding in *Smith* as such, it would likely have expressed this intention when subsequently deciding *Feemster* and *Garrie*.  Providing further insight is the fact that the United States Supreme Court denied a petition for writ of certiorari in the *Meaige* case, where the petitioner sought a determination of whether another narrow exception to the employment at-will doctrine existed in general maritime law.  *See Meaige v. Hartley Marine Corp.***, 501 U.S. 1217 (1991)**; Appellate Petition found at **1991 WL 11176634**.

its international and interstate relations." ***Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 160, 40 S. Ct. 438 (1920)**.

Accordingly, the Court finds Defendant has correctly asserted that Plaintiff's Count I for retaliatory discharge pursuant to Illinois common law is preempted by general maritime law. Further, in line with the Fourth and Fifth Circuit, the only recognized exception to the at-will employment doctrine under general maritime law is when a seaman files a personal injury suit against his employer. This exception does not apply to the instant matter and so, the Court finds Defendant is also entitled to summary judgment in its favor with respect to Count I of Plaintiff's Complaint.

## V.  CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 9) is hereby **GRANTED** in favor of Defendant with respect to Plaintiff's entire Complaint, finding the Illinois Whistleblower Act to be preempted by **46 U.S.C. § 2114** and Illinois common law for retaliatory discharge is preempted by general maritime law. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Signed this 15th day of March, 2007.

/s/          David  RHerndon
**United States District Judge**